ANTONY v. DICKEL et al.

(Supreme Court, Appellate Division, First Department. May 5, 1899.)

1. APPEAL—REVIEW—CONFLICTING EVIDENCE.
    A verdict on conflicting evidence will not be set aside, unless clearly against the weight of the evidence.

2. SETTLEMENT—EVIDENCE—PROVINCE OF JURY.
    Plaintiff was present at a meeting where accounts between her husband and defendants were balanced, and defendants contended she was informed that such settlement included her claims. She did not sign the receipt, nor was the certificate of stock given on such settlement given to her in her name. She testified that her claims were not understood to be included in the settlement, and that defendants agreed to pay her therefor in notes or in cash at some future time. The itemized statement of plaintiff's claim showed many items which corresponded in amounts to the amounts settled for with the husband, but the evidence did not show that they were the same. *Held*, that there was such a conflict of evidence as to require a submission to the jury.

3. AGENCY—RATIFICATION—WHAT CONSTITUTES.
    Plaintiff exchanged a certificate of stock which had been issued to her husband on a settlement between him and defendants for new certificates and a sum of money, and she testified that she received the money and new certificate in behalf of her husband. *Held*, that a ratification was not shown of a settlement in her behalf by her husband, where the stock was issued to him in settlement of accounts between him and defendants and by defendants claimed to include plaintiff's claim.

    Van Brunt, P. J., and Ingraham, J., dissenting.

    Appeal from trial term, New York county.

    Action by Emelie F. Antony against Charles F. Dickel and others. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, certain defendants appeal. Affirmed.

    Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

    Charles P. Howland, for appellants.
    Robert H. Griffin, for respondent.

    O'BRIEN, J. This is an action to recover moneys claimed to have been loaned to the defendants as a firm, and never to have been repaid. The complaint alleges that a partnership existed between the three defendants for the buying and selling of horses, and that the plaintiff loaned various sums to this firm which were never returned. The defendant Antony, who is the husband of the plaintiff, did not defend; but Dickel and Kroehle answered, denying the partnership, the receipt of the money by them, and, as a separate defense, alleged an accord and satisfaction. There is no real dispute as to the agreement between the plaintiff's husband and Dickel and Kroehle. The latter were a firm engaged in conducting a riding academy, and the plaintiff's husband at the time of the arrangement was engaged in giving riding lessons in their academy. Apart from the business of the academy, the three agreed to go into the business of buying and selling horses; and whether we call it a partnership or a joint venture, or by some

other designation, or regard the defendants Dickel and Kroehle as the agents of Antony in the sale of horses, is of no moment, because it is agreed that Antony was to buy horses which were to be sold by him or by the firm of Dickel & Kroehle, and that the profits arising were to be divided between them,—one half to Antony and the other half to Dickel & Kroehle. More serious questions involved are, in what proportions were the moneys for such purchases of horses to be furnished, and by whom, and to whom?

It is conceded that the plaintiff advanced moneys to the amount for which she recovered a verdict; and the jury was called upon to determine whether she loaned the same to her husband, or to her husband jointly with the other defendants. The plaintiff testified positively that, as the result of an agreement made, the moneys were loaned to the three, and she details the persons to whom the several sums were given at different times. From her testimony it would appear that the amounts were paid directly to either member of the firm of Dickel & Kroehle or their bookkeeper, Edward Dickel, except in a single instance, when, at the request of her husband, she gave to him personally the cash to purchase a horse from a Mr. Standish. That this horse was so purchased and placed in the riding academy, subject to the control of the three defendants, is not disputed. We have therefore the positive assertion of the plaintiff, and the equally positive denial by defendants, that any such arrangement was made, or that any moneys were loaned to them; and there were thus presented questions of fact, for the determination of the jury, as to whether the sums were loaned to the three defendants, or advanced to the defendant Antony alone. The evidence on this issue is not so preponderating in defendants' favor as to justify our setting aside the verdict as against the weight of evidence. With regard to the defense of a settlement, or, what is practically an accord and satisfaction, it appears that in June, 1894, an adjustment of accounts was had between the defendant Antony and Dickel & Kroehle, by which, in payment of a credit in Antony's favor on the books, 20 shares of stock were given him in the Dickel & Kroehle Riding Academy Company, a corporation formed at that time, which took over the assets of the firm of Dickel & Kroehle. Were this question one between the defendants alone, then the form of the receipt given at the time by Antony for the stock (from which receipt it appears that the shares were given in full payment of his claim against the other two defendants) would be nearly, if not quite, conclusive. The defendants Dickel & Kroehle undertake, however, to hold the plaintiff bound by this settlement made with her husband in June, 1894, and their contention is that, as she was present at the meeting when the adjustment was had, she must have understood, as they then informed her, that the settlement embraced all the dealings between the parties, including her advances of money. The plaintiff, however, did not sign or join with her husband in the receipt then given, and the stock was not made out in her name; and she insists—and to some extent she is supported by her husband, whose testimony, however, is not complete or satisfactory—that

her understanding of the settlement then made was that it related solely to the profits which her husband was entitled to receive out of the venture of buying and selling horses. She states furthermore that her loans were not understood to be included in the adjustment; Dickel & Kroehle then agreeing to repay her by notes, or at some future time in cash, which promise, she says, they thereafter refused to carry out.

With the purpose of reaching a conclusion concerning these conflicting contentions, and of determining what was actually included in the settlement, we take up the statement of the account as it appears in the exhibits. We are not materially aided; for, although there are many items relating to the purchase of certain horses, which items correspond with amounts set forth in the particulars given in the complaint of moneys loaned by the plaintiff, it does not therein appear whether horses other than those specified were bought by the other defendants, nor how many horses were sold, nor what were the profits. It is merely, therefore, a partial account showing that some horses were bought by Antony at prices for which he was credited on the books, and it does not fully describe the transactions or dealings of the parties in their purchase and sale of horses. We have no statement of what, if anything, the other defendants advanced or contributed; nor do the exhibits purport in any way to refer or relate to advances made by the plaintiff, except in so far as the inference might be drawn that the plaintiff advanced the moneys directly to her husband for the purchase of such of the horses as are mentioned in the account. A slight consideration, therefore, shows that from these exhibits, upon which the defendants place so much reliance, no inference can be satisfactorily drawn that the settlement was understood by the plaintiff as including her claims, or that the stock given to her husband was an adjustment of all differences. And that the plaintiff did not so understand that there was a final settlement, we think, appears from the fact that she refused to sign any receipt, and, as she says, insisted then, as she has ever since, that she was entitled to receive back the money advanced by her, which money, she states, the defendants have repeatedly promised to repay her. Upon this state of the record, we do not see how the learned judge below could have made any other disposition of the controversy than by submitting the issue, as he did, to the jury, as a disputed question of fact.

So, also, the defendants' contention that the plaintiff assented to and ratified the settlement made in June, 1894, as payment of her claims by bringing to them subsequently the certificate for the 20 shares given to her husband, Antony, and receiving and receipting for $535 in cash, and two new certificates of stock, one for six and the other for seven shares, is met by the plaintiff's statement that she received the money and the certificates, and gave the receipt in behalf of her husband and in payment of profits due him.

With the jury's verdict, solving all the disputed questions in favor of the plaintiff, we do not think that we should interfere,

and the judgment and order must, accordingly, be affirmed, with costs. All concur, except VAN BRUNT, P. J., and INGRAHAM, J., who dissent.

INGRAHAM, J. (dissenting). I cannot agree to the affirmance of this judgment. It seems to me that, upon the testimony of the plaintiff, the payment of the money which she seeks to recover was the contribution of the capital to this co-partnership or special adventure, and not a loan by the plaintiff to the defendants. The plaintiff testifies:

"I went over to the Dickel Riding Academy, and I saw Mr. Dickel and Kroehle. The question then came up of advancing some money to buy horses. I said I would, if it was mutually understood that I was to have the benefit of it through my husband receiving a half share of the profits. Dickel and Kroehle, or Mr. Dickel, said then that they would advance half of the amount, Mr. Antony to advance the other half. They would share the expenses and divide the profits. I agreed to do that, and Mr. Antony started out to buy horses, and he brought in one or two."

Upon cross-examination, in answer to the question, "Why did you advance the money?" the plaintiff stated, "I advanced it for the purpose of doing business with it." And to the question, "If you were not to receive anything, any return, any receipt or security, why did you advance the money?" she answered, "I advanced it for the mutual benefit of my husband and myself. I considered that, if he had half of the profit of these horses, I was satisfied with that. I didn't see what else I could have asked for. I think that was reasonable and fair. I was willing then to risk the money in the business of buying and selling horses, which Mr. Antony had been engaged in all these many years." This is the plaintiff's statement of her understanding of the arrangement under which she advanced the money. It is true the plaintiff testified that the defendants had promised to pay her back the money; but this appears to have been a promise made after the horses had been sold, and when she was insisting upon a return of the capital invested by her and the share of the profits which had been made out of the transaction. There is nothing to show a loan by the plaintiff to the defendants as a firm or individually, but rather as a contribution by the plaintiff to the capital of a joint adventure in which Dickel & Kroehle and her husband were jointly interested, the profits of which were to be divided between them.

It seems to be settled that a co-partnership is not liable for money borrowed by one partner for the purpose of contributing his share of the capital stock. 17 Am. & Eng. Enc. Law, 1075, 1076, and cases cited; Lindl. Partn. 203; Dooner v. Haws, 21 Misc. Rep. 642, 47 N. Y. Supp. 1112. As this action was based solely upon a loan made to the defendants, the plaintiff has thus failed to prove her cause of action.